## UNITED STATES COURT OF INTERNATIONAL TRADE

| | | |
|---|---|---|
| _____ ) | | |
| INTEL CORPORATION, and | ) | |
| INTEL AMERICAS, INC. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Court No. 21-00492 |
| | ) | |
| THE UNITED STATES; | ) | |
| OFFICE OF THE UNITED STATES TRADE | ) | |
| REPRESENTATIVE; | ) | |
| KATHERINE C. TAI, IN HER OFFICIAL | ) | |
| CAPACITY AS U.S. TRADE | ) | |
| REPRESENTATIVE; | ) | |
| UNITED STATES CUSTOMS AND BORDER | ) | |
| PROTECTION; and | ) | |
| TROY A. MILLER, IN HIS OFFICIAL | ) | |
| CAPACITY AS ACTING COMMISSIONER | ) | |
| OF U.S. CUSTOMS AND BORDER | ) | |
| PROTECTION, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ ) | | |

## COMPLAINT

Plaintiffs Intel Corporation and Intel Americas, Inc., by and through their attorneys, bring this civil action, alleging the following:

### SUMMARY

1.    This action concerns Defendants' imposition of tariffs purportedly promulgated pursuant to Section 301 of the Trade Act of 1974 ("Trade Act"), 19 U.S.C. § 2411 in furtherance—and escalation—of an unprecedented trade war with the People's Republic of China. Specifically, Intel challenges Defendants' unlawful imposition of a third and fourth round of Section 301 tariffs on certain imported merchandise of Chinese origin, referred to as the "List 3" and "List 4A" tariffs. _Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation_, 83 Fed. Reg. 47,974 (Sept. 21, 2018)

1

(publishing List 3); *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 43,304 (Aug. 20, 2019) (publishing List 4A).

2.      Article I, Section 8 of the U.S. Constitution entrusts the power "{t}o regulate Commerce with foreign Nations" to Congress. The President and subordinate organs of the executive branch—including Defendants—may regulate commerce with foreign nations only pursuant to a valid delegation of power by Congress. The Trade Act is such a limited delegation of Congressional power, pursuant to which the Office of the United States Trade Representative ("USTR") may initiate an investigation to determine whether a foreign nation has engaged in unfair trade practices and, within twelve months, determine what action the United States shall take to respond to those unfair trade practices. The Trade Act does *not* bestow upon Defendants unbounded trade war powers or provision them with an unlimited arsenal for waging that trade war at the time of Defendants' choosing and by whatever means Defendants may choose.

3.      On August 18, 2017, USTR initiated an investigation into China's unfair intellectual property policies and practices pursuant to Section 301. Pursuant to Section 304 of the Trade Act, 19 U.S.C. § 2414, USTR had to determine what action to take, if any, within 12 months after initiation of that investigation, i.e., by August 18, 2018, which is precisely what USTR initially did. After determining that China's intellectual trade practices imposed an unfair burden on U.S. trade, and that the appropriate action in response would be a 25 percent *ad valorem* tariff on merchandise imported from China with an aggregate annual trade value of approximately $50 billion, USTR implemented this 25 percent tariff via "List 1" on June 20, 2018 and "List 2" on August 16, 2018. List 1 (covering approximately $34 billion in aggregate annual imports) and List 2 (approximately $16 billion) explicitly addressed the Chinese intellectual property practices that

2

were the subject of USTR's Section 301 investigation and conformed to the $50 billion aggregate import value that USTR determined to be an appropriate response.

4.      List 3 and List 4A bear little resemblance to those earlier trade actions. First, USTR did not promulgate either List 3 (September 21, 2018) or List 4A (August 20, 2019) within the twelve-month window provided by Section 304, which expired August 18, 2018. Second, neither List 3 nor List 4A were promulgated in response to the Chinese intellectual property practices that were the subject of USTR's Section 301 investigation. Rather, USTR promulgated List 3 and List 4A in response to China's imposition of certain retaliatory tariffs and other Chinese actions unrelated to intellectual property. Thus, Defendants lacked power under Section 304 to promulgate or implement the List 3 and List 4A tariffs.

5.      Nor may USTR fall back on its authority—under Section 307 of the Trade Act, 19 U.S.C. § 2417—to "modify" a prior action under Section 301. Section 307 only permits USTR to modify its prior action when the unfair trade practice *that was the subject of the Section 301 investigation* either increases or decreases, or to terminate or otherwise limit its prior action when USTR determines that the action "is no longer appropriate." Section 307 does *not* permit USTR to impose new tariffs for a reason different from the unfair trade practices it investigated under Section 301.

6.      The arbitrary manner in which Defendants implemented the List 3 and List 4A tariff actions also violates the Administrative Procedure Act ("APA"). USTR (1) failed to provide sufficient opportunity for comment, particularly because it required interested parties to submit affirmative and rebuttal comments on the same day; (2) failed to consider relevant factors when making its decision, such as whether there was any "increased burden" imposed on U.S. commerce due to the unfair intellectual property practices that it originally investigated; and (3) failed to

connect its decisions to the factual record. Indeed, despite receiving over 6,000 comments, including comments from Plaintiffs, USTR provided no analysis regarding how those comments shaped its final promulgation of List 3 or List 4A. USTR's preordained decision-making bears no resemblance to the standards that the APA demands.

7.      The Court should set aside Defendants' actions as *ultra vires* and otherwise contrary to law, as well as order Defendants to refund (with interest) any duties paid by Plaintiffs pursuant to List 3 and List 4A.

## JURISDICTION

8.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(i)(1)(B), which provides that "the U.S. Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for . . . tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue."

## PARTIES

9.      Plaintiff Intel Corporation ("Intel") is a publicly traded company (NASDAQ INTC) headquartered in Santa Clara, California. Intel Corporation is a world leader in the design and manufacturing of essential products and technologies that power the cloud and an increasingly smart, connected world. The company has approximately 110,600 employees worldwide, approximately half of which are in offices around the United States. Intel Corporation has made numerous entries of merchandise subject to List 3—including, but not limited to Intel NUC (Next Unit of Computing) small form factor computers, server systems, computer components, server components, bare printed circuit boards, power supplies, static converters, Intel RealSense cameras, cables, glass wafers, quartz sleeves, and copper laminates, which fall under HTSUS subheadings  7020.00.60,  7409.19.50,  8471.50.01,  8471.80.10,  8473.30.11,  8473.30.51,

8504.40.60, 8504.40.95, 8534.00.00, 8537.10.91, 8544.20.00, 8544.42.20 and 8544.42.90—and as importer of record has paid the additional *ad valorem* duties for these subject products. Intel Corporation has also made numerous entries of merchandise subject to List 4A—including, but not limited to solid state drives, network interface cards, fiberoptic network components, antennas, EMI (electro-magnetic interference) shields, and computer systems, which fall under HTSUS subheadings 8471.49.00, 8517.62.00, 8517.70.00 and 8523.51.00—and as importer of record has paid the additional *ad valorem* duties for these subject products.

10.    Plaintiff Intel Americas, Inc. ("Intel Americas"), is a wholly-owned subsidiary of Intel headquartered in Santa Clara, California. Intel Americas purchases products from Intel and certain affiliates and resells them to third parties. The company has approximately 2,700 employees. Intel Americas has made numerous entries of merchandise subject to List 3—including, but not limited to Intel NUC small form factor computers, server systems, computer components, server components, bare printed circuit boards, power supplies, static converters, Intel RealSense cameras, cables, which fall under HTSUS subheadings 8471.50.01, 8471.80.10, 8473.30.11, 8473.30.51, 8504.40.60, 8504.40.95, 8534.00.00, 8537.10.91, 8544.20.00, 8544.42.20 and 8544.42.90—and as importer of record has paid the additional *ad valorem* duties for these subject products. Intel Americas has also made numerous entries of merchandise subject to List 4A—including, but not limited to solid state drives, network interface cards, fiberoptic network components, antennas, and EMI shields, which fall under HTSUS subheadings 8517.62.00, 8517.70.00 and 8523.51.00—and as importer of record has paid the additional *ad valorem* duties for these subject products.

11.    Defendant United States is the recipient and beneficiary of the List 3 and List 4A tariffs at issue and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

12.     Defendant USTR is an executive agency of the United States charged with investigating a foreign country's trade practices under Section 301 of the Trade Act and implementing "appropriate" responses, subject to the direction of the President. USTR conducted the Section 301 investigation that is the purported legal basis for List 3 and list 4A, promulgated List 3 and List 4A, and made numerous decisions at issue in this case regarding List 3 and List 4A.

13.     Defendant Ambassador Katherine Tai currently holds the position of United States Trade Representative and serves as head of the USTR. In these capacities, she makes numerous decisions regarding List 3 and List 4A. She is sued in her official capacity only.

14.     Defendant United States Customs and Border Protection ("CBP") is the agency that assesses and enforces the tariffs imposed under List 3 and List 4A. CBP has collected payments made by Plaintiffs for the tariffs imposed under List 3 and List 4A.

15.     Defendant Troy A. Miller is the Acting Commissioner of CBP. In this capacity, he oversees CBP's collection of duties paid by Plaintiff under List 3 and List 4A. He is sued in his official capacity only.

**STANDING**

16.      Plaintiffs have standing to bring this action pursuant to 28 U.S.C. § 2631(i), which states that "{a}ny civil action of which the Court of International Trade has jurisdiction, other than an action specified in subsections (a)–(h), may be commenced in the court by any person adversely affected or aggrieved by agency action within the meaning of section 702 of title 5," and under the APA, 5 U.S.C. § 702, which states that "{a} person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." Tariffs imposed by Defendants pursuant to List 3 and List 4A adversely affected and aggrieved Intel and Intel Americas because each company was required to pay these unlawful duties.

**TIMELINES OF ACTION**

17.     A Plaintiff must commence an action under 28 U.S.C. § 1581(i)(1)(B) "within two years after the cause of action first accrues." 28 U.S.C. § 2636(i).

18.     Plaintiffs' cause of action accrues on the date of injury, which, with respect to a particular entry of merchandise, is the date on which the entry is liquidated and the duties for that entry are definitively assessed.

19.     In addition, to the extent the instant action contests action taken by Defendants that resulted in List 4A, Plaintiffs' claims accrued at the earliest on August 20, 2019, when USTR published notice of List 4 in the *Federal Register*.

20.     Plaintiff has therefore timely filed this action with respect to any entry of merchandise on which List 4A duties have been assessed, and any entry of merchandise on which List 3 duties were not definitively assessed before August 20, 2019.

**RELEVANT LAW**

21.     Section 301 of the Trade Act authorizes USTR to investigate a foreign country's trade practices. 19 U.S.C. § 2411(b). If the investigation reveals an "unreasonable or discriminatory" practice, USTR may take "appropriate" action, such as imposing tariffs on imports from the country that administered the unfair practice. *Id*. § 2411(b), (c)(1)(B).

22.     Section 304 of the Trade Act requires USTR to determine whether to take action based on the conclusions of its investigation, and if so, what action to take, within 12 months after the initiation of the underlying investigation. *Id*. § 2414(a)(1)(B), (2)(B).

23.     Section 307 of the Trade Act (in pertinent part) allows USTR to "modify or terminate" an action taken pursuant to Section 301 of the Trade Act either when the "burden or

restriction on United States commerce" imposed by the investigated foreign country's practice has "increased or decreased" or when the action "is no longer appropriate." *Id*. § 2417(a)(1)(B), (C).

## PROCEDURAL HISTORY

### I.    USTR's Investigation

24.    On August 14, 2017, President Donald J. Trump directed USTR to consider initiating a targeted investigation pursuant to Section 301(b) of the Trade Act concerning China's laws, policies, practices, and actions related to intellectual property, innovation, and technology. *Addressing China's Laws, Policies, Practices, and Actions Related to Intellectual Property, Innovation, and Technology*, 82 Fed. Reg. 39,007 (Aug. 17, 2017). According to the President, certain Chinese "laws, policies, practices, and actions" on intellectual property, innovation, and technology "may inhibit United States exports, deprive United States citizens of fair remuneration for their innovations, divert American jobs to workers in China, contribute to our trade deficit with China, and otherwise undermine American manufacturing, services, and innovation." *Id*.

25.    Four days later, on August 18, 2017, USTR formally initiated an investigation into "whether acts, policies, and practices of the Government of China related to technology transfer, intellectual property, and innovation are actionable under [Section 301(b) of] the Trade Act." *Initiation of Section 301 Investigation; Hearing; and Request for Public Comments: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 82 Fed. Reg. 40,213 (Aug. 24, 2017).

26.    Seven months later, on March 22, 2018, USTR released a report announcing the results of its investigation. Office of the United States Trade Representative, *Findings of the Investigation Into China's Acts, Policies, And Practices Related to Technology Transfer, Intellectual Property, and Innovation Under Section 301 of The Trade Act of 1974* (Mar. 22, 2018), *available at* https://ustr.gov/sites/default/files/Section%20301%20FINAL.PDF. USTR found that

certain "acts, policies, and practices of the Chinese government related to technology transfer, intellectual property, and innovation are unreasonable or discriminatory and burden or restrict U.S. commerce." *Id*. at 17. USTR based its findings on (1) China's use of foreign ownership restrictions, foreign investment restrictions, and administrative licensing and approval processes to pressure technology transfers from U.S. to Chinese companies, *id*. at 45; (2) China's use of licensing processes to transfer technologies from U.S. to Chinese companies on terms that favor Chinese recipients, *id*. at 48; (3) China's facilitation of systematic investment in, and acquisition of, U.S. companies and assets by Chinese entities to obtain technologies and intellectual property for purposes of large-scale technology transfer, *id*. at 147; and (4) China's cyber intrusions into U.S. computer networks to gain access to valuable business information, *id*. at 171. In its report, USTR did not quantify the burden or restriction imposed on U.S. commerce by the investigated practices.

27.    On the same date, USTR published a "Fact Sheet" stating that "[a]n interagency team of subject matter experts and economists estimate that China's policies result in harm to the U.S. economy of at least $50 billion per year." OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Section 301 Fact Sheet* (Mar. 22, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/fact-sheets/2018/march/Section-301-fact-sheet. USTR indicated that at President Trump's direction, it would "propose additional tariffs" of 25 percent *ad valorem* "on certain products of China, with an annual trade value commensurate with the harm caused to the U.S. economy resulting from China's unfair policies." *Id*.; *see Actions by the United States Related to the Section 301 Investigation of China's Laws, Policies, Practices, or Actions Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 13,099 (Mar. 27, 2018) (President Trump's directive).

## II.   LIST 1 AND LIST 2

28.     Accordingly, and as set forth in greater detail below, between April and August 2018—i.e., within the 12-month statutory deadline from the initiation of the investigation—Defendants undertook a series of actions to remedy the estimated harm to the U.S. economy caused by the investigated unfair practices. These actions, which resulted in the "List 1" and "List 2" tariffs, ultimately imposed the precise remedy announced by USTR in its March 2018 "Fact Sheet": 25 percent *ad valorem* duties on imports from China with an aggregate annual value of $50 billion.

29.     On April 6, 2018, USTR published notice of its intent to impose "an additional duty of 25 percent on a list of products of Chinese origin." *Notice of Determination and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 14,906, 14,907 (Apr. 6, 2018). The products on the proposed list covered 1,333 tariff subheadings with a total value of "approximately $50 billion in terms of estimated annual trade value for calendar year 2018." *Id*. at 14,907. USTR explained that it chose the $50-billion amount because it was "commensurate with an economic analysis of the harm caused by China's unreasonable technology transfer policies to the U.S. economy, as covered by USTR's Section 301 investigation." OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Under Section 301 Action, USTR Releases Proposed Tariff List on Chinese Products* (Apr. 3, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/april/under-section-301-action-ustr.

30.     On June 20, 2018, following public comment on its prior proposal, USTR published notice of its final list of products subject to an additional duty of 25 percent *ad valorem*, commonly known as "List 1." *Notice of Action and Request for Public Comment Concerning Proposed*

*Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 28,710 (June 20, 2018). USTR explained that it had "narrow[ed] the proposed list in the April 6, 2018 notice to 818 tariff subheadings, with an approximate annual trade value of $34 billion." *Id*. at 28,711.

31.     At the same time that it finalized List 1, USTR announced that it intended to impose a 25 percent *ad valorem* duty on a second proposed list of Chinese products in order to "maintain the effectiveness of [the] $50 billion trade action" grounded in its Section 301 investigation. *Id*. at 28,712. USTR therefore announced a proposed "List 2" covering 284 tariff subheadings with "an approximate annual trade value of $16 billion." *Id*. at 28,711-12.

32.     On August 16, 2018, following public comment on its List 2 proposal, USTR published notice of the final list of products subject to an additional duty of 25 percent *ad valorem* in List 2, comprising "279 tariff subheadings" whose "annual trade value . . . remains approximately $16 billion." *Notice of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 40,823, 40,823-24 (Aug. 16, 2018).

33.     In addition to being promulgated within the twelve-month window permitted by Section 304, List 1 and List 2 were an explicit response to China's "acts, policies, and practices related to technology transfer, intellectual property, and innovation," which USTR had found to be "unreasonable or discriminatory and burden or restrict U.S. commerce." 83 Fed. Reg. at 28,711 (List 1); *Id.* at 40,823 (List 2). They were also commensurate with USTR's assessment of the magnitude of the burden imposed on U.S. commerce by the investigated practices. *Id.* at 28,711; *Id.* at 40,823.

11

III.   LIST 3 AND LIST 4

34.    Unfortunately, List 1 and List 2 would prove to be an early volley in what would become an increasingly bitter trade war between the United States and China. But while the Trade Act may have authorized this initial action, Defendants erred when they attempted to use the Trade Act to wage the entire war. In the year following USTR's issuance of List 1 and List 2, Defendants substantially and unlawfully expanded the scope of the tariffs imposed under Section 301 of the Trade Act to cover imports worth more than $500 billion—ten times the amount it had deemed "commensurate" with the findings of USTR's original investigation—in response to Chinese policies and practices that were not the subject of the USTR's investigation.

A.    List 3

35.    Shortly after President Trump directed USTR in April 2018 to consider imposing duties on $50 billion in Chinese products, China threatened to impose retaliatory duties on the same value of imports from the United States. In response, President Trump "instructed the USTR to consider whether $100 billion of additional tariffs would be appropriate under Section 301" due to "China's unfair retaliation." THE WHITE HOUSE, *Statement from Donald J. Trump on Additional Proposed Section 301 Remedies* (Apr. 5, 2018), *available at* https://www.whitehouse.gov/ briefings-statements/statement-president-donald-j-trump-additional-proposed-section-301- remedies/.

36.    When USTR finalized List 1 in June 2018, President Trump warned China that he would consider imposing additional tariffs on Chinese goods if China retaliated against the United States. *See e.g.*, Vicki Needham & Max Greenwood, *Trump Announces Tariffs on $50 Billion in Chinese Goods*, THE HILL (June 15, 2018), *available at* http://thehill.com/homenews/ administration/392421-trump-announces-tariffs-on-50-billion-in-chinese-goods ("The  president said the United States will pursue additional tariffs if China retaliates 'such as imposing new tariffs

12

on United States goods, services or agricultural products; raising non-tariff barriers; or taking punitive actions against American exporters or American companies operating in China.'").

37.     Following through on his warning, on June 18, 2018, President Trump formally directed USTR to consider whether the United States should impose additional duties on products from China with an estimated trade value of $200 billion—despite USTR having not yet implemented List 1 and List 2. President Trump acknowledged that China's threatened retaliatory "tariffs on $50 billion worth of United States exports" motivated his decision. THE WHITE HOUSE, *Statement from the President Regarding Trade with China* (June 18, 2018), *available at* https://www.whitehouse.gov/briefings-statements/statement-president-regarding-trade-china-2/ ("This latest action by China clearly indicates its determination to keep the United States at a permanent and unfair disadvantage, which is reflected in our massive $376 billion trade imbalance in goods. This is unacceptable.").

38.     Acknowledging the purpose of the President's directive, USTR stated that it would design the newly proposed duties to address China's threatened retaliatory measures, rather than any of the harms identified in its Section 301 investigation. OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *USTR Robert Lighthizer Statement on the President's Additional China Trade Action* (June 18, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/ press-releases/2018/june/ustr-robert-lighthizer-statement-0 (explaining that, although Lists 1 and 2 "were proportionate and responsive to forced technology transfer and intellectual property theft by the Chinese" identified in the Section 301 investigation, the proposed duties for a third list of products were necessary to respond to the retaliatory and "unjustified tariffs" that China may impose to target "U.S. workers, farmers, ranchers, and businesses").

39.     Following through on its own earlier threat, China retaliated by imposing 25 percent *ad valorem* tariffs on $50 billion in U.S. goods implemented in two stages of $34 billion and $16 billion on the same dates the United States began collecting its own 25 percent tariffs under List 1 (July 6, 2018) and List 2 (August 23, 2018).

40.     About a week after China imposed its first round of retaliatory duties, USTR published notice of its proposal to "modify the action in this investigation by maintaining the original $34 billion action and the proposed $16 billion action, and by taking a further, supplemental action" in the form of "an additional 10 percent *ad valorem* duty on [a list of] products [from] China with an annual trade value of approximately $200 billion." *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 33,608, 33,608 (July 17, 2018). USTR invoked Section 307(a)(1)(C) of the Trade Act, pursuant to which USTR "may modify or terminate any action, subject to the specific direction, if any, of the President with respect to such action, . . . if . . . such action is being taken under [Section 301(b)] of this title and is no longer appropriate." *Id*. at 33,609 (citing 19 U.S.C. § 2417(a)(1)(c)). USTR initially set a deadline of August 17, 2018 for initial comments; August 20-23, 2018 for a public hearing; and August 30, 2018 for rebuttal comments. *Id*. at 33,608.

41.     In its notice, USTR confirmed that it had relied on China's decision to impose "retaliatory duties" as the primary basis for its proposed action. *Id*. at 33,609 (asserting as justification "China's response to the $50 billion action announced in the investigation and its refusal to change its acts, policies, and practices"). USTR explicitly tied the $200 billion in its proposed action to the level of retaliatory duties imposed by China on U.S. imports, noting that "action at this level is appropriate in light of the level of China's announced retaliatory action ($50

14

billion) and the level of Chinese goods imported into the United States ($505 billion in 2017)." *Id*.; *see also id*. (Because "China's retaliatory action covers a substantial percentage of U.S. goods exported to China ($130 billion in 2017)," "the level of the U.S. supplemental action must cover a substantial percentage of Chinese imports."). Although it pointed to China's retaliatory measures, USTR did not identify any increased burdens or restrictions on U.S. commerce resulting from the unfair practices that USTR had investigated. *See id*.

42.     USTR's contemporaneous press statements corroborated that China's retaliatory duties motivated its proposed action. Ambassador Lighthizer stated that the proposed action came "[a]s a result of China's retaliation and failure to change its practice." OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, Statement by U.S. Trade Representative Robert Lighthizer on Section 301 Action (July 10, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/july/statement-us-trade-representative.

43.     Ambassador Lighthizer subsequently announced that, in light of China's retaliatory duties, USTR would propose to increase the additional duty from 10 percent to 25 percent ad valorem. Rather than addressing the practices that USTR investigated pursuant to Section 301 of the Trade Act, he stated that China "[r]egrettably . . . has illegally retaliated against U.S. workers, farmers, ranchers and businesses." OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Statement by U.S. Trade Representative Robert Lighthizer on Section 301 Action* (Aug. 1, 2018), *available    at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/august/statement-us-trade-representative.

44.     Shortly thereafter, USTR, at the direction of President Trump, formally proposed "raising the level of the additional duty in the proposed supplemental action from 10 percent to 25 percent." *Extension of Public Comment Period Concerning Proposed Modification of Action*

*Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 38,760, 38,760 (Aug. 7, 2018). USTR also set new dates for a public hearing over six days ending on August 27, 2018. *See id.*; *see also* OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Public Hearings on Proposed Section 301 Tariff List* (Aug. 17, 2018) (modifying hearing schedule), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/august/public-hearings-proposed-section-301.

45.     At the same time, USTR adjusted the deadlines for the submission of written comments, setting September 6, 2018—less than a month later—as the new deadline for both initial and rebuttal comments from the public. 83 Fed. Reg. at 38,761. That adjustment, deviating from its past practices, prevented both USTR and the public from considering initial comments at the hearing and left insufficient time for interested parties to review and respond to the initial comments filed by other parties. USTR also limited each hearing participant to five minutes. Docket No. USTR-2018-0026, https://regulations.gov/document/USTR-2018-0026-0001. Despite those obstacles, approximately 350 witnesses appeared at the six-day hearing, and the public submitted over 6,000 comments. *Id*. Intel timely submitted comments during this process. *Intel Comments on USTR Tariff List 3* (Sept. 6, 2018), https://www.regulations.gov/document/USTR-2018-0026-3922.

46.     Just eleven days after receiving final comments from the public, President Trump announced that he had directed USTR "to proceed with placing additional tariffs on roughly $200 billion of imports from China." THE WHITE HOUSE, *Statement from the President* (Sep. 17, 2018) https://www.whitehouse.gov/briefings-statements/statement-from-the-president-4/.  Once  again, the President made clear that China's response to the $50 billion tariff action (*i.e.*, List 1 and List 2 duties) motived his decision, and he immediately promised to proceed with "phase three" of the

plan—an additional $267 billion tariff action—"if China takes retaliatory action against our farmers or other industries." *Id*.

47.     Following the President's announcement, USTR published notice of the final list of products subject to an additional duty, a list commonly known as "List 3." 83 Fed. Reg. at 47,974. List 3 contained products with an aggregate annual import value of approximately $200 billion, dwarfing USTR's $50 billion trade actions in response to the Section 301 investigation. *Id*. USTR imposed a 10 percent *ad valorem* tariff on these products, which would automatically rise to 25 percent on January 1, 2019. *Id*. USTR determined that the List 3 duties would apply to all listed products that enter the United States from China on or after September 24, 2018. *Id*. Unsurprisingly, given the rushed process, USTR did not respond to Intel's comments or any of the over 6,000 other comments that it received, or to any of the testimony provided by roughly 350 witnesses. *Id*.

48.     As legal support for List 3, USTR for the first time cited Section 307(a)(1)(B) of the Trade Act, which provides that USTR "may modify or terminate any action, subject to the specific direction . . . of the President . . . taken under Section 301 if . . . the burden or restriction on United States commerce of the denial of rights, or of the acts, policies, or practices, that are the subject of such action has increased or decreased." *Id*. (brackets omitted). USTR stated that the relevant burden "continues to increase, including following the one-year investigation period," adding that "China's unfair acts, policies, and practices include not just its specific technology transfer and IP polices referenced in the notice of initiation in the investigation, but also China's subsequent defensive actions taken to maintain those policies." *Id*. USTR also cited Section 307(a)(1)(C) of the Trade Act, arguing that China's response to the $50 billion tariff action "has shown that the current action no longer is appropriate" because "China openly has responded to

the current action by choosing to cause further harm to the U.S. economy, by increasing duties on U.S. exports to China." *Id*. at 47,975.

49.    In the months that followed, China and the United States attempted to resolve their differences through trade negotiations. Based on the progress made with China in those negotiations, the Trump Administration announced in December 2018 and again in February 2019 that it would delay the scheduled increase in the List 3 duty rate from 10 to 25 percent. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 65,198 (Dec. 19, 2018); *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 7,966 (Mar. 5, 2019).

50.    The trade negotiations ultimately fell apart. In May 2019, USTR announced its intent to raise the tariff rate on List 3 goods to 25 percent, effective either May 10, 2019 or June 1, 2019, depending on the day of export. *See Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 20,459 (May 9, 2019) ("List 3 Rate Increase Notice"); *see also Implementing Modification to Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 21,892 (May 15, 2019). The notice cited China's decision to "retreat from specific commitments agreed to in earlier rounds" of negotiations as the basis for the increase in the duty rate. *List 3 Rate Increase Notice*, 84 Fed. Reg. at 20,459. Unlike with past imposition of new tariffs, USTR did not seek public comment but rather simply announced that the increase would occur. *Id*.

51.    Recognizing that List 3 would cause substantial harm to U.S. companies and consumers, as well as the U.S. economy, USTR in June 2019 invited the public to seek exclusions

from List 3 duties on a product-specific basis. *Procedures for Requests to Exclude Particular Products From the September 2018 Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 29,576 (June 24, 2019).

52.     On September 20, 2019, USTR granted exclusions for computer graphics accelerator cards imported under HTSUS subheading 8473.30.1180, and certain server components imported under HTSUS subheading 8473.30.5100, retroactive to September 24, 2018 and effective until August 7, 2020. *Notice of Product Exclusions, Amendment to the Exclusion Process, and Technical Amendments: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 49,591 (Sept. 20, 2019). USTR subsequently extended these exclusions through December 31, 2020. *Notice of Product Exclusion Extensions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 85 Fed. Reg. 48,600 (Aug. 11, 2020). Until their expiration on December 31, 2020, these exclusions exempted Intel and Intel Americas from paying List 3 duties on the products that they imported under subheadings 8473.30.1180 and 8473.30.5100. Since that time, however, Intel and Intel Americas have paid List 3 duties on all entries of products under HTSUS subheadings 8473.30.1180 and 8473.30.5100.

53.     The duties imposed on products covered by List 3 remain in effect as of the date of this Complaint. Except for the products subject to the exclusions described above that entered the United States while those exclusions were in effect, Plaintiffs paid unlawful List 3 tariffs on all entries of subject products since List 3 took effect, and Plaintiffs continue to pay the unlawful List 3 tariffs at the current rate of 25 percent on numerous imports of subject products.

B.      List 4

54.      On May 17, 2019, a mere eight days after it published notice of its decision to increase the duty rate on imports covered by List 3, USTR announced its intent to proceed with yet another list—"List 4"—covering even more products subject to additional duties. Under USTR's proposal, List 4 would impose an additional duty of 25 percent *ad valorem* on products worth approximately $300 billion in aggregate annual trade. *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 22,564, 22,564 (May 17, 2019). USTR explained that its decision was motivated by China's "retreat[] from specific commitments made in previous [negotiating] rounds [and] announce[ment of] further retaliatory action against U.S. commerce." *Id*.

55.      Similar to the process it followed for List 3, USTR invited the public to comment on proposed List 4 and participate in a hearing. *Id*. The public submitted nearly 3,000 comments. Docket No. USTR-2019-0004, https://www.regulations.gov/document/USTR-2019-0004-0001. Despite the opportunity to comment, the timeline for participation in the hearing again left little room for meaningful input: USTR required witnesses to submit drafts of their testimony by June 10, 2019, seven days before the deadline for fully developed written comments, and then it again limited witnesses to five minutes of testimony at the hearing. *Id*. Intel once again timely submitted comments during this process. *Intel Comments on USTR Tariff List 4* (June 17, 2019), https://www.regulations.gov/comment/USTR-2019-0004-2124.

56.      On August 20, 2019, USTR issued a final notice adopting List 4 in two tranches. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 43,304 (Aug. 20, 2019). List 4A would impose a 10 percent *ad valorem* duty on goods worth roughly $120 billion, effective

20

September 1, 2019. Id. at 43,304. List 4B would impose a 10 percent *ad valorem* duty on the remaining goods (with limited exclusions "based on health, safety, national security, and other factors"), effective December 15, 2019. *Id*. at 43,305. Once again, USTR did not address any of the nearly 3,000 comments submitted or any of the testimony provided by witnesses, other than a perfunctory claim that its determination "takes account of the public comments and the testimony." *Id*.

57. As legal support for its action, USTR again cited Section 307(a)(1)(B) and (C) of the Trade Act, stating that it may modify its prior action taken pursuant to Section 301 of the Trade Act if (1) "[t]he burden or restriction on United States commerce" imposed by the investigated foreign country practice "has increased or decreased," or (2) "the action . . . is no longer appropriate." *Id*. at 43,304. Instead of finding any increased burden on U.S. commerce from the practices that were the subject of USTR's investigation, however, USTR merely pointed to "China's subsequent defensive actions taken to maintain those unfair acts, policies, and practices as determined in that investigation," including retaliatory tariffs on U.S. imports, retreating from commitments during negotiations, and devaluing its currency. *Id*.

58. Just ten days later, USTR published notice of its decision to increase the tariff rate applicable to goods covered by List 4A and List 4B from 10 percent to 15 percent. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 45,821 (Aug. 30, 2019). USTR explained that it increased the tariff rate because, shortly after it finalized List 4A and List 4B, "China responded by announcing further tariffs on U.S. goods." *Id*. at 45,822. USTR once again cited to China's retreat from its negotiation commitments and devaluation of its currency as grounds for its action. *Id*.

59.     Recognizing that List 4A would cause substantial harm to U.S. companies and consumers, as well as the U.S. economy, USTR in October 2019 invited the public to seek exclusions from List 4A duties on a product-specific basis. *Procedures for Requests to Exclude Particular Products from the August 2019 Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 57,144 (Oct. 24, 2019). USTR granted a limited number of these requests on a rolling basis through August 5, 2020. *Notice of Product Exclusions and Amendments: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 85 Fed. Reg. 48,627 (Aug. 11, 2020).

60.     On March 17, 2020, USTR granted exclusions for single-use medical masks imported under HTSUS subheading 6307.90.9889 (items which as of July 20, 2020 are described under subheadings 6307.90.9845, 6307.90.9850, or 6307.90.9870), retroactive to September 1, 2019 and effective until September 1, 2020. *Notice of Product Exclusions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 85 Fed. Reg. 15,244 (Mar. 17, 2020). USTR subsequently extended this exclusion through December 31, 2020. *Notice of Product Exclusion Extensions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 85 Fed. Reg. 54,616 (Sept. 2, 2020). Until its expiration on December 31, 2020, this exclusion exempted Intel and Intel Americas from paying List 4A duties on single-use medical masks. Since that time, however, Intel and Intel Americas have paid List 4A duties on all entries of these products.

61.     On December 18, 2019, after successfully negotiating a limited trade deal with China, USTR published notice that it would "suspend indefinitely the imposition of additional duties of 15 percent on products of China covered by" List 4B. *Notice of Modification of Section*

*301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 69,447, 69,447 (Dec. 18, 2019). USTR also stated its intent to reduce the tariff rate applicable to products covered by List 4A. *Id*. USTR ultimately implemented the reduction for List 4A on February 14, 2020, and the applicable tariff since that date has been 7.5 percent *ad valorem*. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 85 Fed. Reg. 3,741 (Jan. 22, 2020).

62.     In the months that followed, the United States and China implemented the limited trade deal that they negotiated near the end of 2019. OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *United States and China Reach Phase One Trade Agreement* (Dec. 13, 2019), https://ustr.gov/about-us/policy-offices/press-office/press-releases/2019/december/united-states-and-china-reach. During that time, Defendants declined to impose additional duties on imports covered by List 4B.

63.     The duties imposed on products covered by List 4A remain in effect as of the date of this Complaint. Except for the products subject to the exclusion described above that entered the United States while that exclusion was in effect, Plaintiffs paid unlawful List 4A tariffs on all entries of subject products since List 4A took effect, and Plaintiffs continue to pay the unlawful List 4A tariffs at the current rate of 7.5 percent on numerous imports of subject products.

**STATEMENT OF CLAIMS**

**COUNT I – *ULTRA VIRES* ACTS BY USTR**

64.     Plaintiffs incorporate by reference paragraphs 1 through 63 of this Complaint.

65.     The Declaratory Judgment Act authorizes any court of the United States to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

66.     Pursuant to Section 301 of the Trade Act, USTR may impose tariffs when it determines that "an act, policy, or practice of a foreign country is unreasonable or discriminatory and burdens or restricts United States commerce, and action by the United States is appropriate." 19 U.S.C. § 2411(b). USTR failed to predicate its action giving rise to List 3 or List 4A on any such determination.

67.     If USTR concludes upon investigation that a foreign country maintains an unfair trade practice, Section 304 of the Trade Act requires USTR to "determine what action, if any," to take within "12 months after the date on which the investigation is initiated." 19 U.S.C. § 2414(a)(1)(B), (2)(B). USTR's action giving rise to List 3 occurred in September 2018, over a year after USTR initiated the underlying Section 301 investigation on August 18, 2017. USTR's action giving rise to List 4A came even later, in August 2019, approximately two years after USTR initiated the underlying Section 301 investigation on August 18, 2017.

68.     Section 307 of the Trade Act authorizes USTR to "modify or terminate" an action taken pursuant to Section 301(b) of the Trade Act when the burden imposed on U.S. commerce from the foreign country's investigated unfair acts, policies, or practices increases or decreases. 19 U.S.C. § 2417(a)(1)(B). Section 307 of the Trade Act, however, does not permit Defendants to increase tariffs for reasons unrelated to the acts, policies, or practices that USTR investigated pursuant to Section 301 of the Trade Act.

24

69.     Section 307 of the Trade Act also authorizes USTR to "modify or terminate" an action taken pursuant to Section 301(b) of the Trade Act if the initial action taken by USTR "is no longer appropriate." 19 U.S.C. § 2417(a)(1)(C). Section 307 of the Trade Act, however, does not authorize Defendants to increase tariff actions that are no longer "appropriate," but rather only to delay, taper, or terminate such actions.

70.     Accordingly, the Trade Act does not authorize the actions taken by USTR that resulted in the List 3 and List 4A tariffs.

71.     Plaintiffs are therefore entitled to a declaratory judgment that USTR's actions giving rise to List 3 and list 4A are *ultra vires* and contrary to law, and therefore void.

### COUNT II – USTR VIOLATION OF THE APA

72.     Plaintiffs incorporate by reference paragraphs 1 through 71 of this Complaint.

73.     The APA authorizes the Court to hold unlawful and set aside agency action that is: "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence." 5 U.S.C. § 706(2).

74.     The USTR exceeded its authority under the Trade Act in promulgating List 3 and List 4A and therefore acted "not in accordance with the law" and "in excess of statutory authority" for the reasons set forth in Count I.

75.     USTR also promulgated List 3 and List 4A in an arbitrary and capricious manner because they did not provide a sufficient opportunity for comment, failed to meaningfully consider relevant factors when making their decisions, and failed to adequately explain their rationale. Defendants' preordained decision-making resulted in the unlawful imposition of tariffs on imports

covered by List 3 and List 4A with an aggregate annual import value of approximately $420 billion.

76.    Plaintiffs are therefore entitled to a declaratory judgment that USTR's actions giving rise to List 3 and list 4A did not comply with the requirements of the APA and are therefore void.

## DEMAND FOR JUDGMENT AND RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

a.      Enter judgment in favor of Plaintiffs and declare List 3 and List 4A void;

b.      vacate the List 3 and List 4A rulemaking;

c.      permanently enjoin Defendants from applying List 3 or List 4A against Plaintiffs and collecting any duties from Plaintiffs pursuant to List 3 or list 4A;

d.      order Defendants to refund, with interest, any duties paid by Plaintiffs pursuant to List 3 on entries where those duties were definitively assessed by Defendants on or after August 20, 2019;

e.      order Defendants to refund, with interest, any duties paid by Plaintiffs pursuant to List 4A;

f.      award Plaintiffs its costs and reasonable attorney fees; and,

g.      grant such other and further relief as may be just and proper.

Dated: August 20, 2021

/s/ Michael P. House
Michael P. House
Andrew Caridas
Shuaiqi Yuan
**PERKINS COIE LLP**
800 Thirteenth St., NW
Washington, D.C. 20005
202-654-6288
mhouse@perkinscoie.com

*Counsel to Intel Corporation and
Intel Americas, Inc.*